UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:09-CR-71 JD |
| | ) | |
| DONALD NEWLAND | ) | |

OPINION and ORDER

This cause came before the Court on June 23, 2010, for a hearing on the motion of Defendant Donald Newland to suppress evidence [DE 13], which the Government opposed [DE 16]. For the reasons that follow, the Court denies Newland's Motion to Suppress because the Government has met its burden in proving by a preponderance of the evidence that Newland knowingly and voluntarily waived his *Miranda* rights, and did not unambiguously invoke his right to remain silent. *See Colorado v. Connelly*, 479 U.S. 157, 167-68 (1986); *U.S. v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008) ("The government bears the burden of demonstrating the admissibility of a confession . . . by a preponderance of the evidence") (citations omitted).

FACTS

The events pertinent to the suppression motion occurred while Newland was in custody and interrogated at the LaPorte County Jail on June 20, 2008, relative to theft charges unconnected to the felon in possession offense charged in this case's Indictment [DE 1]. In fact, Newland was interrogated three times on June 20, with only the third interrogation being the subject of the instant motion.[1] Prior to the first and third interrogations, Newland was advised of his *Miranda* rights. The third interrogation was recorded by video (DVD), introduced into evidence without objection, and

---

[1] During the suppression hearing, counsel for Defendant conceded that the events that took place during the first and second interrogation are not at issue.

viewed in its entirety during the course of the suppression hearing[2] [Gov.'t Exb. 1]. Thus, the facts surrounding the June 20 interrogation are undisputed. Further, the parties do not dispute that Newland was in custody for *Miranda* purposes, and that Newland made a knowing, intelligent, and voluntary waiver of his *Miranda* rights.[3] *See Edwards v. Arizona*, 451 U.S. 477, 482-83 (1981).

The only issue presented here is whether, based on the uncontroverted facts, Newland unambiguously invoked his right to remain silent during the course of the interrogation. If he did, without a subsequent waiver any responses to further questioning which should have ceased are inadmissible and must be suppressed.

The DVD shows Newland in an interview room in the basement of the jail, accompanied by Detective Scott Moniz of the St. Joseph County Police Department and Detective Mike Raymer of the LaPorte County Sheriff's Department. Detective Moniz read Newland his *Miranda* rights and then handed Newland a written copy of those rights. Newland acknowledged his understanding of his *Miranda* rights and waived those rights by stating "absolutely," nodding his heading, and signing the waiver of rights form.

Detective Moniz began questioning Newland about the unrelated theft of extension cords from a residence on June 18, 2008. Newland explained that he found the extension cords, he did not steal them. But Detective Moniz continued to question Newland's version of the events. Detective

---

[2]Both counsel for the Defendant and the Government submitted uncertified transcriptions of the DVD [DE 18-1; Gov.'t Exb. 2, respectively], and neither party objected to the transcriptions being used only as an aid. The statements made by Newland during the course of the interrogation, as recited herein, are obtained from the Court's reliance on the DVD [Gov.'t Exb. 1].

[3]Counsel for Defendant has consistently maintained the position throughout briefing and argument that Newland knowingly and voluntarily waived his *Miranda* rights.

Moniz then made a transition into questioning Newland about another theft of extension cords that occurred on the same day at a different residence. Newland denied any involvement in this incident, refuted Detective Moniz's followup questions, and repeatedly maintained his innocence. Approximately six minutes into the interrogation, the following exchange took place:

> **Detective Moniz**: Ok, you know. I, I listened to your whole other conversation with these other officers and you were bull shittin' them too.
>
> **Newland**: Oh my God.
>
> **Detective Moniz**: Ok.
>
> **Newland**: I wanna go back upstairs.
>
> **Detective Moniz**: And.
>
> **Newland**: So you came out here for no reason. I'd like to go back upstairs.
>
> **Detective Moniz**: Well, you've already told me you stole something from one place.
>
> **Newland**: That's fine. I mean that's the only thing I've done.
>
> **Detective Moniz**: Uh, ok.
>
> **Newland**: In my opinion it wasn't f—ing theft, it was off a road, it wasn't, I didn't go into anybody's house, I didn't go into anybody's garage. It was off of a dirt road, it was extension cords that were cut. That's the only thing I've done.
>
> **Detective Moniz**: But it's not your property.
>
> **Newland**: It wasn't on anybody's property, it was a road.

The detective continued the theft related questions, and Newland continued to aggressively provide the details of the incident and adamantly maintain his innocence. Thereafter, approximately ten minutes into the interrogation, the following was stated:

> **Detective Moniz**: So, on the same day, from two different houses, the same things were taken, the same car was seen, the same license plate number, but you only did one?

3

**Newland**: I, like I said, I told you, I was at the one place, that was it. And the only reason I was back there because of a friend's house.

**Detective Moniz**: Alright, what difference does it make if you did one or two? It's the same thing.

**Newland**: It's not. When you didn't do anything though it isn't.

**Detective Moniz**: Well honey, dude, obviously you did, because it's the same car, and the same license plate number.

**Newland**: Alright, like I said,–

**Detective Moniz**: Why –

**Newland**: I'll go back upstairs.

**Detective Raymer**: Two people, two different people (inaudible)

**Newland**: I'm done.[4]

**Detective Moniz**: (Inaudible)–

**Newland**: You made a worthless trip. Sorry.

**Detective Moniz**: No, I'm charging you with theft.

**Newland**: Charge me, that's fine. I don't care. That's all I did. I was there. I was at that one house that was it, on Chicago Trail, that's the only one I was at. I didn't steal any other extension cords, or a bat or anything else or break in, or kick in a door or nothing. I was at the one place, Chicago Trail. I gave the reason I was there. Extension cords–Fine, if it's a theft it's a theft. Like I said they got it back. I didn't steal. I even stopped at the lady's house that was right down the street and asked her.

---

[4]While the Court finds Newland's alleged invocations to be ambiguous, to the extent Newland's statement "I'm done" constituted an attempt to invoke his right to remain silent [DE 16 at 8, n. 2], Newland waived his right to silence immediately thereafter by continuing to talk and protest his innocence without being asked a question. *See infra* pp. 8-9 (discussing *Berghuis v. Thompkins*, No. 08-1470, 2010 WL 2160784, at 11 (U.S. June 1, 2010) ("the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.")).

> I mean it wasn't like I was going there to break into the f—ing house and steal everything they got in the house and then I was going to stop and ask her a question. It's not what I did. I asked them literally if Joe Ruby and Jake Davis and all them still lived there, evidently they didn't.
>
> **Detective Moniz**: Don't you think you should have done that first?
>
> **Newland**: Not really. I thought they lived there, that's why I drove up there.

Shortly thereafter, Detective Raymer began questioning Newland regarding the sale of a gun to a pawn shop in Michigan (the possession of which is charged in this case) and Newland freely responded to the allegations. Newland was then asked several more questions regarding the alleged thefts, to which he responded by again maintaining his innocence. Newland eventually stated "Quit asking me questions, I told you what I done," yet continued talking about the thefts, finished his drink, and exited the room still talking.

Newland was ultimately indicted on one count of being a felon in possession of a firearm. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2).

ANALYSIS

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. Anyone "questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

Under *Miranda*, an interrogation must immediately cease when an "individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent." 384 U.S.

at 473-74. Statements elicited by police after a defendant invokes this right are inadmissible. *See Michigan v. Mosley*, 423 U.S. 96, 103-04 (1975). To come within the ambit of this rule, however, a suspect's invocation of his right to remain silent must be unambiguous. *U.S. v. Sherrod*, 445 F.3d 980, 982 (7th Cir. 2006) (the suspect's statement "I'm not going to talk about nothin' . . . I ain't gonna talk about shit" was ambiguous, "as much a taunt—even a provocation—as it [was] an invocation of the right to remain silent"); *U.S. v. Banks*, 78 F.3d 1190, 1197 (7th Cir. 1996) (an "ambiguous invocation of the right to remain silent does not require that the police cease all questioning"), *vacated on other grounds*, *Mills v. U.S.*, 519 U.S. 990 (1996).[5]

The United States Supreme Court recently reaffirmed this standard in *Berghuis v. Thompkins*, No. 08-1470, 2010 WL 2160784 (U.S. June 1, 2010). In *Thompkins*, it was determined that silence does not invoke the right to remain silent; instead, a suspect must "unambiguously" invoke his *Miranda* rights. *Thompkins*, 2010 WL 2160784, at *8. Justice Kennedy, writing for the majority, indicated that Thompkins, after remaining silent for almost two hours and forty-five minutes, "would have invoked his 'right to cut off questioning'" had he said "that he wanted to remain silent or that he did not want to talk to the police." *Id.* at *9 (quotation omitted).

Turning to the present case, Newland argues that the officers interrogating him did exactly what *Miranda* prohibits [DE 13 at 3]. While Newland admits that he initially consented to speaking with the officers, he believes that his statements that "I wanna go back upstairs . . . So you came out here for no reason. I'd like to go back upstairs" and "Alight, like I said, . . . I'll go back upstairs . . . I'm done . . . You made a worthless trip. Sorry" unambiguously invoked his right to remain

---

[5]*Mills* involved determining the appellate standard of review to be employed when analyzing whether a suspect's Fifth Amendment rights were violated. *U.S. v. Mills*, 122 F.3d 346 (7th Cir. 1997).

6

silent. *Id*. Therefore, Newland argues that any statements following this invocation of his rights, must be suppressed. *Id*.

The Government argues just the opposite. That is, there is no basis to suppress Newland's statements because his "supposed invocation", in the context of his continuing protestations of innocence, did not constitute an unambiguous expression of his right to remain silent [DE 16 at 3].

First, the parties agree, and the Court finds, that Newland's waiver of his *Miranda* rights was knowing and voluntary. *See Thompkins*, 2010 WL 2160784, at *9-12 (the waiver must be the product of free and deliberate choice rather than intimidation, coercion, or deception, and the waiver must be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it) (citing *Moran v. Burbine*, 475 U.S. 412 (1986)). There is no contention that Newland did not understand his rights, and from this it follows that he knew what he gave up when he spoke. This determination is made based on the facts that Newland was provided a written copy of his *Miranda* warnings after being advised of those rights by Detective Moniz, nodded his head in acknowledgment of his rights and voluntarily signed a waiver. Thereafter, Newland answered the officer's questions as to two alleged thefts, and engaged in a discussion and course of conduct indicating waiver. The police were not required to then rewarn Newland of his *Miranda* rights minutes later. Furthermore, during the course of the interrogation, Newland was never made to feel threatened or coerced in any manner. The interrogation was conducted in a standard interview room in the afternoon, it was approximately fifteen minutes long, and there were no circumstances present indicating that coercive tactics were employed. As a result, Newland knowingly and voluntarily waived his right to remain silent.

Second, based on the DVD and facts presented, the Court finds that Newland's statements, when coupled with his surrounding conduct, were not sufficiently clear to invoke his right to remain silent. *See Thompkins*, 2010 WL 2160784, at *8 (citing *Davis v. U.S.*, 512 U.S. 452, 459 (1994)). Here, Newland was provided *Miranda* warnings, expressly waived his *Miranda* rights, and proceeded to cooperate in answering questions for several minutes. Newland became angry and on two separate occasions stated that he wanted to go back upstairs, but then continued talking immediately after each such comment.

Defense counsel attempts to distinguish the facts of this case from other cases wherein a defendant's suggested invocation of rights were deemed ambiguous. He contends that Newland's circumstances do not involve an implied waiver by virtue of silence, nor ambiguous statements invoked prior to waiver. Newland argues that once he stated he wanted to go upstairs, "[i]t would be impossible for a police officer to continue questioning if the defendant were indeed taken back upstairs" [DE 21 at 4] and therefore constitutes an unambiguous invocation of rights.

However, this argument relies more on the result of Newland's request, i.e. were he taken upstairs questioning would necessarily cease, rather than the potential inferences of the comments when taken in the context of his continuing behavior. Asking to go upstairs is not the same as asking to cease questioning, but even so, the request was immediately followed by Newland's aggressive plea of his innocence, even when no question was asked of him. Furthermore, Newland's visible agitation when stating that he wanted to go back upstairs and that the officers wasted a trip to see him, could have meant that he wanted the interrogation to end, as much as it could have been an angry response to the questions asked and the officers' refusal to believe Newland's explanations, or could have meant that the officers were wasting their time because he was not going to admit to

8

any wrongdoing. *See U.S. v. Mills*, 122 F.3d 346, 350 (7th Cir. 1997) (the determination as to whether the defendant effectively invoked his *Miranda* rights is one of fact, that is: "Under the totality of the circumstances, what was the message that [the defendant] wished to convey?"). Recognizing that there are no magic words that a defendant must use in order to invoke his *Miranda* rights, in light of the totality of the circumstances of this case, the officers were not required to guess how to proceed in the face of Newland's ambiguous behavior. *See e.g., DeWeaver v. Runnels*, 556 F.3d 995, 1000-02 (9th Cir. 2009) (the suspect's request to go back to jail during the interrogation was not an invocation of his right to silence as he did not evidence a refusal to talk further). Newland not only evidenced an intent to continue the interview, but he continued talking, and so the officers did too.

Because Newland did not unambiguously state that he wanted to invoke his right to remain silent or that he did not want to talk to police, the officers did not have an obligation to stop the interrogation or to clarify his ambiguous angry statements and actions. When Newland wanted to end his interrogation, he knew how to do it unambiguously. Yet, he did not do so before uttering statements during the interrogation, which are now admissible. To conclude otherwise would be "[t]reating an ambiguous or equivocal . . . statement as an invocation of *Miranda* rights" which would "place a significant burden on society's interest in prosecuting criminal activity." *Thompkins*, 2010 WL 2160784, at *8.

In sum, Newland received and understood his *Miranda* warnings, waived the right to remain silent by making informed and uncoerced statements to the police, and did not unambiguously invoke his *Miranda* rights thereafter.

CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Donald Newland's Motion to Suppress [DE 13]. The trial date of August 3, 2010 to be held in South Bend at 9:30 a.m., is CONFIRMED.

SO ORDERED.

ENTERED:  June 25, 2010

                                               /s/ JON E. DEGUILIO
                                              Judge
                                              United States District Court